**FILED**

**March 26, 2018**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 7:30 AM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **RENEE JOHNSON,** | ) | **Docket No.: 2017-05-0540** |
| **Employee,** | ) | |
| **v.** | ) | |
| **VALEO, INC.,** | ) | **State File No.: 32721-2016** |
| **Employer,** | ) | |
| **AND** | ) | |
| **TRAVELERS INDEM. CO.,** | ) | **Judge Robert Durham** |
| **Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER GRANTING TEMPORARY PARTIAL DISABILITY BENEFITS

This case came before the Court for an Expedited Hearing on March 20, 2018. The issue is whether Ms. Johnson is entitled to temporary partial disability benefits from May 1, 2017, through the present and ongoing.[1] Valeo asserted that it rightfully terminated Ms. Johnson for misconduct and does not owe her temporary benefits because it would have accommodated her post-surgery restrictions but for the termination. The Court holds Ms. Johnson is likely to prove that the actions leading to her termination did not constitute misconduct under Valeo's rules and procedures. Thus, it grants Ms. Johnson's request for benefits.

### History of Claim

Ms. Johnson worked as a first-shift production supervisor for Valeo beginning in 2011. The undisputed evidence was that from her hire until April 8, 2016, Ms. Johnson received positive evaluations and consistent raises from Valeo management. Valeo never formally disciplined her or recommended corrective action before April 8.

Valeo paid Ms. Johnson a salary in her supervisory position. However, if she and the other supervisors worked weekends, Valeo paid them overtime. To receive overtime, Ms. Johnson entered her weekend hours on an electronic form and submitted it to human

---

[1] At the hearing, the parties stipulated to compensability, Ms. Johnson's inability to work without accommodations, her compensation rate at $855.50, and the period for which benefits are due if the Court held Valeo owes them.

resources for approval.

In October 2015, Valeo hired a new human resources manager, Jordan Greene. Ms. Greene testified that soon after her hire, she began receiving complaints about Ms. Johnson's attendance. She started investigating the hours Ms. Johnson actually worked. Around the same time, Valeo also found the third-shift supervisor's performance unsatisfactory and demoted him in February 2016. Following the demotion, plant manager Fabien Chevrier required Ms. Johnson and the second-shift supervisor, Andre Dysart, to cover the third-shift supervisory duties until he found a replacement. By agreement, Mr. Dysart extended his hours to cover the first half of the third shift, while Ms. Johnson came in early to cover the second half. They did not receive additional pay for covering the shift on weekdays, but Mr. Dysart and Ms. Johnson could turn in any weekend hours spent supervising the third shift as overtime.

On April 8, 2016, Ms. Greene and Mr. Chevrier issued a written warning to Ms. Johnson regarding multiple lapses in attendance, failure to provide required supervision, and falsification of weekend timesheets. Ms. Johnson acknowledged the warning by signing it. At the hearing, Ms. Johnson did not seriously dispute the warning's assertions. However, she testified that, since she was a salaried employee, she never maintained an accurate record of her actual hours worked and would often come and go throughout her shift. Further, she stated Mr. Chevrier was well aware of this and never previously complained.

A few weeks later, on April 27, Ms. Johnson injured her left shoulder and wrist after tripping on some cords and falling. She received authorized treatment and received a sling for her shoulder. Ms. Johnson returned to work the next day and continued working at regular duty until May 13. On that day, Valeo terminated Ms. Johnson without warning, asserting that she falsified her timesheet records by stating she worked several Sundays from February to May when she did not do so.

With regard to the timesheets, Ms. Johnson acknowledged that she actually worked from 12:30 a.m. until 5:30 to 6:00 a.m. on Monday mornings, not Sunday mornings as stated on the timesheet. However, she considered those hours to be part of the "weekend" since her designated weekly shift did not begin until 6:30 Monday morning. Further, the computer would not allow her to change the date when she entered her hours, so she felt compelled to use the line for Sunday to record her time. Ms. Johnson asserted Valeo ignored her attempt to explain her reasoning at the time of her termination.[2]

---

[2] Ms. Johnson also testified that she felt Ms. Greene became somewhat hostile toward her after she observed her in court over a domestic matter. However, Ms. Greene denied this allegation, and the Court gave the matter little weight.

2

In addition, the evidence established that either Ms. Greene or her assistant approved each of Ms. Johnson's timesheets. Further, testimony indicated Ms. Greene and Mr. Chevrier were aware of the actual hours Ms. Johnson and Mr. Dysart worked to cover the third shift over the weekends. However, neither Ms. Greene nor Mr. Chevrier said anything to Ms. Johnson about the asserted discrepancies, even when Ms. Greene issued the written warning on April 8. The unrebutted evidence revealed that Mr. Dysart, the second-shift supervisor, also submitted and was paid for work performed on Monday morning. However, Valeo did not terminate, or even discipline, him for his actions.

In response, Ms. Greene testified Ms. Johnson knew that, while she could receive overtime for covering third shift during weekend hours, she would not receive additional compensation for doing so throughout the week. Further, no one disputed that Ms. Johnson did not work on Sundays but worked early Monday mornings, and she should not have claimed weekend overtime for those hours. Ms. Greene explained that she approved the timesheets due to simple negligence on her part, and she did not catch the error until May when her assistant pointed it out.[3] Finally, she explained that Mr. Dysart received pay for the time he worked on Monday morning because that was part of the second shift that began on Sunday evening and extended into Monday.

Following her termination, Ms. Johnson obtained other employment. On April 12, 2017, Ms. Johnson underwent shoulder surgery, which left her temporarily totally disabled. Valeo paid disability benefits until May 1, 2017, when her treating physician released her to return to work with restrictions. Ms. Johnson's current employment could not accommodate her restrictions. However, Ms. Greene testified Valeo would have done so if Ms. Johnson were not terminated for cause.

### Findings of Fact and Conclusions of Law

Ms. Johnson has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, since this is an expedited hearing, she must only come forward with sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits in order to meet her burden. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

The sole issue is whether Ms. Johnson is entitled to temporary disability benefits following her release to return to work with restrictions on May 1, 2017. Under Workers' Compensation Law, an employee may recover temporary partial disability benefits if "able to resume some gainful employment but has not reached maximum recovery." *Shepherd v. Haren Const. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). Temporary restrictions assigned by physicians during an

---

[3] Valeo did not discipline Ms. Greene for her oversight.

3

injured worker's medical treatment do not establish an entitlement to continued temporary disability benefits if the employee is able to work without loss of income. *Id.* at \*14.

Here, the Court finds that, based on Ms. Greene's testimony and the fact that immediately following her injury, Ms. Johnson worked at Valeo for two weeks with her arm in a sling, Valeo could have accommodated Ms. Johnson's restrictions had she not been terminated the year before. However, the Court must also determine whether the actions that led to Ms. Johnson's termination constituted misconduct. If not, she might be entitled to temporary disability benefits. *See Mace v. Express Servs., Inc.*, TN Wrk. Comp. App. Bd. LEXIS 49, at \*8, 9 (Dec. 11, 2015).

In *Mace,* the Appeals Board held that even though an employee might have an injury that leaves her temporarily disabled, an employer still has a right to enforce workplace rules. Thus, if an employer fires an employee because of misconduct "under established or ordinary workplace rules and/or expectations," and those actions were a true motivation for termination, then the employer will not be obligated to pay temporary disability benefits. *Id.* at \*9.

In this case, the Court finds that the actions Valeo cited as the reason for Ms. Johnson's termination did not rise to the level of misconduct "under established or ordinary rules and/or expectations."[4] First, the Court finds that Ms. Johnson credibly explained why she completed the timesheets as she did. She believed, and in fact, still believes, that Valeo's procedures entitled her to overtime for the work she performed on Monday mornings before her assigned shift. No one disputed that Ms. Johnson actually worked the number of hours stated on the timesheets, with the only discrepancy being the actual date she worked. No evidence suggests that this discrepancy was due to Ms. Johnson's intent to mislead Valeo. Rather, as she testified without dispute, her inability to change the date in the computer program caused the discrepancy. The Court also notes that Ms. Greene admitted that after April 8, she had no evidence that Ms. Johnson did not work the hours Valeo expected her to work. In other words, the evidence supports the proposition that Ms. Johnson corrected the behavior that led to the written warning.

Further, the Court finds that Valeo's actions also support a holding against misconduct. Mr. Chevrier and Ms. Green were both generally aware of the arrangement between Mr. Dysart and Ms. Johnson regarding the division of third-shift supervisory duties. Yet neither told Ms. Johnson that she could not claim overtime for her work before her regular first shift on Monday morning. Indeed, either Ms. Green or her assistant approved all seven time cards in question and never addressed the issue with

---

[4] The Court feels compelled to note that if, on April 8, Valeo terminated Ms. Johnson based on the actions cited in the written warning, the Court's holding might be different. However, it did not do so but chose to issue a warning instead.

4

Ms. Johnson until her termination.

Finally, the Court finds it significant that Mr. Dysart also claimed overtime for work performed on Mondays just after midnight, and he was neither terminated nor disciplined for these actions. Ms. Greene attempted to differentiate between Mr. Dysart and Ms. Johnson by stating that Mr. Dysart's shift began on the weekend and only concluded on Monday. However, the fact is that both Mr. Dysart and Ms. Johnson claimed overtime for work performed on Monday mornings, and only Ms. Johnson received punishment. At the very least, the fact that Mr. Dysart also claimed overtime supported Ms. Johnson's belief that she was entitled to it as well.

Thus, the Court holds that Valeo owes Ms. Johnson temporary partial disability benefits. Given that it is undisputed that Ms. Johnson cannot return to work with her current employer given her restrictions, the amount she can effectively earn in her partially disabled condition is $0; thus, her compensation rate during this period is the equivalent of two-thirds of her average weekly wage. *Williams v. Saturn Corp.*, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005). As a result, Ms. Johnson is entitled to temporary disability benefits from May 1, 2017, through this order's date at the agreed compensation rate of $855.50, and this compensation shall continue until her authorized physician finds her to be at maximum medical improvement or she is able to return to work.

IT IS, THEREFORE, ORDERED that:

1. Valeo shall pay Ms. Johnson temporary partial disability benefits from May 1, 2017, through this order's date, at the compensation rate of $855.50 for a total of $39,841.86. Valeo shall continue to pay these benefits to Ms. Johnson until her authorized physician places her at MMI or she is able to return to work.

2. This matter is set for a Scheduling Hearing on May 7, 2018, at 1:30 p.m. C.S.T. The parties or their counsel must call 615-253-0010 or toll-free at 855-689-9049 to participate in the hearing. Failure to call may result in a determination of the issues without your participation.

**ENTERED THIS THE 26thDAY OF MARCH, 2018.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

5

# APPENDIX

Technical Record

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Order Granting Motion for Continuance
5. 2nd Order Granting Continuance
6. Employee's Expedited Hearing Brief
7. Employer's Expedited Hearing Brief

Exhibits

1. Ms. Johnson's affidavit
2. First Report of Injury
3. Wage Statement
4. Choice of Physician Form
5. Job Description
6. Medical Records
7. Ms. Greene's affidavit
8. April 8, 2016 Corrective Action Form
9. Formal Termination Notice
10. Work Status Reports
11. Email from Ms. Johnson to Valeo
12. Ms. Johnson's Time Sheets
13. Mr. Dysart's Time Sheets

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 26th day of March, 2018.

| Name | Certified Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|
| Carolina Martin | | | | X | cvmartin@hughesandcoleman.com |
| Vanessa Hall | | | | X | vrhall@travelers.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims

6